Dear Representative Thomas:
This is in response to your request for an opinion of this office relative to the appropriate method to be followed for the determination of parish boundary lines.
You state that some of your constituents own property on the Washington/Tangipahoa Parish boundary line, and that there are apparently conflicting legal descriptions for this line.
Your query is stated as follows:
 In light of the fact that the Louisiana Constitution of 1974 ratified all parish boundary lines as they existed at that time and the fact that these two parishes have conflicting boundary descriptions, is it the responsibility of the parish governing bodies to determine the correct parish boundary lines pursuant to R.S. 50:221 et seq. or should the Legislature act pursuant to its constitutional authority to change parish boundary lines with approval of two thirds of the electors in each parish?
We commenced our research by contacting the State Land Office to acquire and review all known information pertaining to the various boundary descriptions. State Land Office personnel were most cooperative and supportive and researched all available historic records that could be found in the State Land Office, the offices of the Clerks of Court for both parishes, and the official minutes of the Police Jury meetings from both parishes from 1869 forward. The effort was to locate any document that would clarify the conflicting boundary descriptions between Tangipahoa and Washington Parish, particularly in light of the fact that a reference from a study by the former State Department of Public Works[1] noted that the boundary description "was presumably revised later on by agreement between the Police Juries of Tangipahoa and Washington Parishes * * * ".
The agreement referred to in this study could not be found after a comprehensive search of all available records by State Land Office personnel. Therefore, it appears that there are actually three (3) conflicting boundary descriptions.
As pointed out in your request, Article VI, § 1 of the Louisiana Constitution of 1974 provides that the parishes and their boundaries as established on the effective date of the Constitution are recognized and ratified.
Pursuant to these provisions, the Legislature may establish and organize new parishes, dissolve and merge them, and change parish boundaries if approved by two-thirds of the voters in each affected parish[2].
The Louisiana Revised Statutes also provide several alternative methods for surveys, re-surveys and the establishment of parish boundaries. For instance, La. R.S. 50:121 authorizes the State Land Office to conduct surveys to re-establish township, range, and section lines, corners and half-mile stations.[3]
This furnishes sufficient authority for the Land Office, particularly with the consent of the landowner(s), to conduct a re-survey of the conflicting boundary descriptions.
In order to accomplish this work, the Land Office may employ surveyors and helpers to make any survey or re-survey authorized by law and, upon petition of any individual owning land in any township or section which has never been surveyed or which has been only partially surveyed or in which the lines or corners have become obliterated or which are uncertain, the Land Office whall [shall] proceed with the survey or re-survey work, provided that the landowner petitioning for the survey is requried [required] to bear the expenses. La. R.S. 50:123.[4]
Another alternative provision is found in La. R.S.50:151[5], authorizing any parish, except the Parish or Orleans, to conduct surveys in the same manner as the State Land Office by La. R.S. 50:121, above, costs to be paid from funds appropriated by the parish. La. R.S. 50:153.
La. R.S. 50:152 also provides that upon the petition of landowners owing more than fifty (50%) percent of the land in a township which has never been wholly surveyed or the lines of which are obliterated or destroyed, the governing authority of the parish in which the township is situated shall immediately have the township surveyed and a map made thereof, costs to be paid by the landowners petitioning for the survey.[6]
A third alternative provision, referred to in your original request, is at found in La. R.S. 50:221, authorizing a parish governing authority to fix the boundary line of any adjoining parish by the passage of an ordinance to that effect fixing the time and place for starting the running of the boundary.[7]
The parishes are free to pursue any of these several alternatives and may use either private surveyors, parish surveyors, or surveyors provided by the State Land Office.
Once the procedure for the survey has been established, the survey technique to be employed or methodology for the survey would be a subject for discussion among the parish authorities, as there are several possible methods available under the circumstances. For instance, the survey might follow any one of the following survey lines: 1) a re-survey of the section, quarter-section and sixteenth section lines; 2) the diagonal method which was followed by Chamberlin on the Tangipahoa Survey; 3) a line of boundary drawn in the middle of the main downstream track or flow of navigation in a stream which serves as a natural boundary to divide the parishes; and 4) a new line to be agreed upon by the parishes.
There are advantages and disadvantages to each method, and agreement between the parishes would be essential to the establishment of a legal and enforceable boundary.
We hope this opinion is of benefit and if we may of further help, please call upon us at any time.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
BY: ____________________________________________
 GARY L. KEYSER Assistant Attorney General
RPI/GLK/bb
[1] Lombard, Gervais, R.E., 1942, Study of Parish Boundaries, State Department of Public Works
[2] The pertinent provisions of Article VI, § 1 read as follows:
 Section 1. (A) Parishes and Boundaries Ratified. Parishes and their boundaries as established on the effective date of this constitution are recognized and ratified.
 (B) Creation; Dissolution; Merger; Boundaries. The legislature by law may establish and organize new parishes, dissolve and merge parishes, and change parish boundaries if approved by two-thirds of the electors in each parish affected voting thereon at an election held for that purpose.
[3] La. R.S. 50:121 reads as follows:
§ 121. Reasons for surveys
 The Register of the State Land Office may cause surveys and resurveys to be made, in order to establish or re-establish township lines, section lines, corners, and half-mile stations, while the original monuments have been destroyed or lost or are uncertain, or where the lines, corners, or stations were never actually established.
[4] La. R.S. 50:123 reads as follows:
 § 123. Petition for survey; notice; survey and map; cost
 Upon petition of any individual owning land in any township, or section thereof, which has never been surveyed or which has been only partially surveyed or in which the lines or corners have been obliterated or are uncertain, in whole or part, the Register of the State Land Office shall, after giving written notice to the other record owners of land in the area in need of surveying so that they may attend if they desire, proceed without delay to have the township surveyed or re-surveyed and a map made showing township and section lines and corners and half-mile stations. The landowner petitioning for the survey shall bear the expense thereof.
[5] La. R.S. 50:151 reads as follows:
 § 151. Authorization to hire surveyors, procure field notes, and make surveys
 Any parish, except the Parish of Orleans, may procure necessary field notes from any previous survey and may employ one or more competent surveyors to survey or re-survey and establish or re-establish township lines, range lines, section corners, and half-mile stations where these have never been surveyed or established or where the original witness trees have been destroyed or lost.
[6] La. R.S. 50:153 reads as follows:
§ 153. Cost of survey or re-survey
 Except in the situation referred to in R. S. 50:152, the govenring [governing] authority of the parish may appropriate money out of the general fund of the parish to defray the expenses of the survey or resurvey and of the establishing or re-establishing of the lines, corners, and half-mile stations with cement, cast iron, or other permanent material. In the situation, set out in R.S. 50:152, the landowners petitioning for the survey shall bear its cost.
[7] La. R.S. 50:221 reads as follows:
§ 221. Fixing parish boundary
 Whenever the governing authority of any parish desires to ascertain the fix the boundary line of any adjoining parish, it shall pass an ordinance to that effect fixing a time and place for starting the running of the boundary. It shall then serve the presiding officer of the governing authority of the adjoining parish with a copy of the ordinance and with notice, at least six months in advance, of the time and place of starting the running of the boundary.
 The surveyors appointed for that purpose, or, if there were none specifically appointed, the parish surveyors of both parishes shall, at the time fixed, proceed to the running and marking of the boundary line. If the surveyor of either parish falls to attend at the time and place fixed, the other surveyor shall wait two days and if the first does not arrive within that time shall proceed to the running and marking of the boundary line.